UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

LAWRENCE WILLIS,
    Plaintiff,

vs.                                                                                           04-1413

Lt. SCROGUM, et. al.,
    Defendants.

This cause is before the court for consideration of the defendants' motions for summary judgement. [d/e 59, 61].

## I. BACKGROUND

The plaintiff, Lawrence Willis, brought this action pursuant to 42 U.S.C. §1983 alleging that his constitutional rights were violated by 22 defendants at the Pontiac Correctional Center. The Defendants include Lieutenants Scrogum and Dallas; Correctional Officers Ganieany, Altenbomer, McCormick, Tangman, Baker, Akinson and Rubach; Superintendant M. Melvin; Assistant Wardens Cox and Luster; Illinois Department of Corrections Directors Orr and Walker, Warden Mote; Administrative Review Board Member Melody Ford[1]; Investigator Wilson; Dr. Funk; Dr.Vade and Medical technicians Allen, Williams and Brady.

On January 24, 2005, the court conducted a merit review of the plaintiff's 46 page complaint and found that he had adequately alleged 17 violations of his constitutional rights against the defendants in their individual capacities only. *See* January 24, 2005 Court Order. There are two motions for summary judgement before the court. However, the motions do not address all of the plaintiff's claims.

The first motion for summary judgement was filed by Defendants Dr. Funk and Dr. Vade. The second motion for summary judgement was filed by Defendants Mote, Cox, Luster, Walker, Orr and Ford. The defendants are challenging the plaintiff's claims that:

    1) Dr. Vade was deliberately indifferent to the plaintiff's serious medical condition on August 17, 2003;
    2) Defendants Funk, Mote, Luster, Ford, Cox, Orr and Walker violated the Eighth Amendment when they were informed that the plaintiff was beaten by correctional officers on several occasions and needed medical care, but no action was taken;
    3) The defendants retaliated against the plaintiff for his grievances and complaints by

---

[1] The plaintiff incorrectly identified the Chairperson of the Administrative Review Board as G. Fickley in his complaint. The court has corrected the record to reflect that the chairperson was Melody Ford.

the use of excessive force, denying meals and tampering with meals; and
4) All of the defendants participated in a conspiracy to cover up the incidents of excessive force and retaliation.

The plaintiff was transferred and had difficulty obtaining his legal document in order to provide a response to the dispositive motions. The plaintiff was given additional time and has now filed responses to the motions.

## II. FACTS

The following facts are taken from the statement of undisputed facts, the plaintiff's response to the statement of undisputed facts and the exhibits provided by the parties.

The plaintiff's complaints against Dr. Funk pertain to his role as Medical Director. Specifically, the plaintiff alleges that Dr. Funk failed to treat the plaintiff or acknowledge that the plaintiff was denied medical treatment after he was assaulted by prison guards

Dr. Funk says he never personally examined the plaintiff. However, Dr. Funk says on December 9, 2002, he received a letter from the plaintiff stating that he had been assaulted by staff and he was denied medical attention by Dr. Funk's staff. Dr. Funk responded the same day with a memorandum to the plaintiff stating that:

> [m]edical concerns are to be directed to your cellhouse CMT who will evaluate you for treatment or appropriately refer you. Alternatively, you may send a yellow "Medical Request" form to the healthcare unit. (Def. Memo, Ex. B-2).

Dr. Funk received additional correspondence from the plaintiff on December 11, 2002, which stated that the CMT's would not stop by the plaintiff's cell. The plaintiff then asked the doctor to submit a medical form on his behalf. Dr. Funk again responded on the same day providing the same information to the plaintiff on how to properly address his claims. The doctor also told the plaintiff that he would forward a copy of the plaintiff's letter to the cellhouse CMT's.

Dr. Funk says the plaintiff's medical records indicate that he was seen by a medical physician on the next day, December 12, 2002. Dr. Bulatovic examined the plaintiff in the health care unit and the plaintiff alleged that he had been assaulted on December 7, 2002. Dr. Bulatovic observed a contusion on the plaintiff's left cheek. He did not observe any other bruises, lumps, abrasions or bite marks. Dr. Bulatovic prescribed Motrin, and concluded that the plaintiff's injuries did not coincide with the plaintiff's claims.

Dr. Funk claims he was not informed of the plaintiff's claims that his medical needs were again ignored after he was assaulted on December 26, 2002. Nonetheless, the doctor states that the medical records indicate that the plaintiff was provided medical treatment on December 27, 2002.

Dr. Vade examined the plaintiff on this occasion. Dr. Vade says the plaintiff's face was swollen, but there was no evidence of bleeding. Dr. Vade ordered x-rays of the plaintiff's facial bones and chest. He prescribed Motrin and warm compress pack and instructed the plaintiff to follow-up with a physician after the X-rays. Dr. Vade says he did not believe the plaintiff's injuries put him in any risk nor did he believe the plaintiff was suffering from a serious medical condition. (Dr. Vade Aff, p. 2). The X-rays later revealed no abnormalities.

Dr. Funk received another letter from the plaintiff on January 13, 2003 asking why he had not receive his medical records dated December 12, 2002 and December 27, 2002. The letter did not contain any allegations that the plaintiff had been denied medical treatment or complaints about the treatment he had received. Dr. Funk responded by telling the plaintiff that he could only obtain copies of medical records from the medical records department.

Dr. Funk says he was never informed of the plaintiff's allegations that he was assaulted and denied medical care on January 15, 2003, but medical records show the plaintiff received medical care on January 16, 2003.

Dr. Funk says on June 16, 2003, the plaintiff alleged that CMT Brady refused to give him treatment when he claimed that a cup of liquid soap was thrown in his eyes. Dr. Funk says complaints against CMTs are handled by the Nursing Director, not the Medical Director. Nursing Director Ms. Ellinger responded to the grievance and spoke to the CMT. The CMT had no recollection of any conversation with the plaintiff about liquid soap. The plaintiff did not request any follow up medical care concerning this incident.

Dr. Vade next saw the plaintiff on August 19, 2003. The plaintiff said he had been assaulted and then threatened to kill himself in order to see a doctor. Dr. Vade observed abrasions on the plaintiff's forehead, both sides of his face and his lower lip. There was no sign of bleeding. The doctor prescribed two Tylenol tablets and prescribed additional tablets if needed for pain. He also placed the plaintiff on suicide watch and ordered x-rays. The x-rays revealed no additional injury to the plaintiff. Dr. Vade says in his medical opinion, he did not consider the plaintiff to be suffering from a serious medical condition on August 19, 2003. Nonetheless, the doctor says he did attend to the plaintiff's complaints and ordered follow-up care.

Dr. Funk says he was never informed of the plaintiff's additional claims that he was assaulted on December 12, 2002, April 30, 2003 or August 17, 2003. Dr. Funk says based on his review of the plaintiff's letters, grievances and medical records, it appears the plaintiff failed to follow the proper protocol on various occasions throughout his incarceration at Pontiac Correctional center. Dr. Funk says in his medical opinion, the plaintiff "was not suffering from a serious medical need" during his incarceration. (Funk Aff., p. 5).

The plaintiff admits that he did not intend to allege that Dr. Funk retaliated against him by harassing him, using excessive force, denying meals, tampering with meals or threatening him. (Plain Resp, p.2, #5)

The plaintiff also clarified in his deposition and his response to the statement of undisputed facts that his Eighth Amendment claim against Defendants Mote, Cox, Luster, Walker, Orr and Ford is based on their failing to protect him from staff brutality. (Plain. Dep., p. 15) (Plain. Resp., p. 3)

The plaintiff says his claims of staff assaults were investigated by the Internal Affairs Department at Pontiac Correctional Center. The plaintiff says Chief Investigator Corey Wilson interviewed him about four times. (Plain. Depo, p. 16) The plaintiff also says his claims were investigated by the Illinois State Police after Wilson informed them of his claims. (Plain. Depo, p. 18). The plaintiff says Wilson did not begin his investigation until after the third staff assault on December 26, 2002. The plaintiff says he was first interviewed by the state police on January 15, 2003.

The plaintiff claims he sent numerous letters to Defendants Walker, Orr and Melody Ford. However, the plaintiff admits he has never personally talked to them about his claims. (Plain. Depo., p. 7, 9, 10) The plaintiff says Defendant Walker has never responded to any of his correspondence. The plaintiff claims Defendant Orr did respond to two of his letters. He has provided a copy of only one response dated July 15, 2003. Orr states that the letter is in response to the plaintiff's complaint to the Governor. "Please be advised that the Illinois State Police are conducting an investigation and appropriate action will be taken based on the conclusion of the investigation. " (Plain Resp, Orr Ltr) The plaintiff says he received responses from Administrative Review Board Chair person Melody Ford to two of his letters. Again, the plaintiff has provided a copy of one response. Ford informed the plaintiff that his grievance has been submitted past the 60 day time frame and would not be addressed.

The plaintiff has also submitted several letters from Defendant Luster. Letters dated December 30, 2002; January 6, 2003; May 5, 2003 and July 8, 2003 indicate that due to the allegations made in a letter from the plaintiff, the letter was forwarded to Internal Affairs for handling. Another letter dated January 22, 2003, states that Defendant Luster received the plaintiff's grievances dated December 7, 12, and 28, 2002 involving staff conduct. Two of the grievances were submitted to the warden, but returned as they were not deemed emergency grievances. The plaintiff was advised that he needed to forward the grievances to his counselor. The third grievances was also not properly submitted and was a not submitted as an emergency grievance. "Any future grievances sent directly to my office will be returned. Emergency grievances are to be forwarded directly to the Warden for handling." (Plain. Resp, Luster ltr)

## II. LEGAL STANDARD

The entry of summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©). A "material fact" is one that "might affect

the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the nonmoving party. *Id.*

A party moving for summary judgment initially has the burden of showing the absence of any genuine issue of material fact in evidence of record. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 153 (1970); *Schroeder v. Barth, Inc.,* 969 F.2d 421, 423 (7th Cir. 1992). A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994). "Summary judgement is not a discretionary remedy. If the plaintiff lacks enough evidence, summary judgement must be granted." *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir. 1994).

### III. ANALYSIS

A.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendants Vade and Funk argue that the plaintiff has failed to exhaust his administrative remedies as required for his claims against them. The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. 42 U.S.C. §1997e(a).

The defendants have attached an affidavit from the Public Service Administrator for the Administrative Review Board (herein ARB). Terri Anderson states that she has searched the records of the ARB and found no grievances filed by the plaintiff "regarding a medical treatment provided by Dr. Funk or Dr. Vade." (Anderson Aff, p. 3) Unfortunately, the affidavit provided by the defendants is somewhat ambiguous. The only claim in the plaintiff's complaint concerning direct medical care provided by either doctor is his claim that Dr. Vade was deliberately indifferent to the plaintiff's serious medical condition on August 17, 2003. The remainder of his claims concern retaliation, conspiracy or the failure to provide any care.

The plaintiff responds that he tried repeatedly to exhaust his administrative remedies, but received no responses from grievance officers. The plaintiff also states that he repeatedly sent his grievances to the ARB chairperson and to the Director of the Illinois Department of Corrections, but got no response. The plaintiff has submitted a copy of a grievance dated August 29, 2003, which does not have a response from the grievance officer nor is it stamped to indicate that it was in fact submitted.

There is simply not enough clear evidence before the court to determine whether or not the plaintiff exhausted his available administrative remedies. The plaintiff's claims that he sent his grievances to the ARB chairman and the Illinois Department of Corrections Director are not relevant. The plaintiff must follow the proper procedures to exhaust his administrative remedies. However, it is unclear if the plaintiff did in fact submit grievances to his counselor that were not processed. The motion for summary judgement on this issue is denied.

B.       DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL CONDITION

Defendants Funk and Vade argue that the plaintiff has failed to demonstrate that they were deliberately indifferent to the plaintiff's serious medical condition. Deliberate indifference to a serious injury or medical need violates a prisoner's rights under the Eighth Amendment to be free from cruel and unusual punishment. *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001); *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001), *citing Estelle v. Gamble*, 429 U.S. 153, 182-83 (1976). The injury or need must be objectively serious, *and* the official must personally know of the risk and consciously disregard it. *See Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999); *Mathis v. Fairman*, 120 F.3d 88. 91 (7th Cir. 1997); *Wynn v. Southward*, 251 F.3d at 593 (2001). An objectively serious injury or medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Chapman*, 241 F.3d at 845, *quoting Zentmyer v. Kendall County* 220 F.3d 805, 810 (7th Cir. 2000)(*quoting Gutierrez v. Peters* 111 F.3d 1364, 1373 (7th Cir. 1997)). An objectively serious condition also presents itself if "'failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain.'" *Reed v. McBride*, 178 F.3d 849, 852 (7th Cir. 1999), *quoting Gutierrez*, 111 F.3d at 1373. The subjective component (deliberate indifference) does not encompass negligence or even gross negligence. *Id.*, *citing Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991); *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). The prisoner must "show that the prison official was subjectively aware of the prisoner's serious medical needs and disregarded an excessive risk that a lack of treatment posed to the prisoner's health or safety." *Wynn*, 251 F.3d at 593, *citing Farmer v. Brennan*, 511 U.S. at 837; *Zentmyer*, 220 F.3d at 811.

The plaintiff claims he repeatedly told Dr. Funk that he was assaulted by correctional officers, was in serious pain from his injuries and was denied medical treatment. The only evidence the plaintiff has presented that he "repeatedly" informed Dr. Funk about his medical problems are letters he says he sent to the doctor. The plaintiff has submitted copies of a few letters...but only two letters are marked received by Pontiac Correctional Center's Health Care Unit. These are the two letters which Dr. Funk provided responses. In both responses, the doctor informed the plaintiff what steps he needed to take to receive medical care.

The plaintiff cannot ignore the established procedures for obtaining medical care, and then complain that the health care staff did not respond to his requests. Even medical offices outside prison walls require patients to follow procedures to set up appointments. In addition, there is no evidence that plaintiff suffered from any injury that needed immediate medical attention. The doctor who examined the plaintiff on December 12, 2002 is not a party to this lawsuit and found based on his examination that the plaintiff's injuries did not corroborate his claims of assault

The plaintiff also claims that since Dr. Funk is the Medical Director, he is responsible for the delays the plaintiff experienced in receiving care. First, simply because Dr. Funk is a supervisor is insufficient to establish that he is responsible for the plaintiff's claims. The doctrine of *respondeat superior* (supervisor liability) does not apply. *Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992). "(A) supervising prison official cannot incur §1983 liability unless that officer is shown to be personally responsible for a deprivation of a constitutional right." *Vance v*

*Peters,* 97 F.3d 987, 992 (7th Cir. 1996). Second, if the plaintiff is claiming deliberate indifference based on a delay in care, he must provide evidence that the delay contributed to his injuries. *See Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996)(prisoner who complains that a "delay in medical treatment rose to the level of a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment in order to succeed.") The plaintiff has made no such showing.

It is doubtful based on the record before the court that the plaintiff could establish that he suffered from a serious medical injury. However, even if the plaintiff could pass this hurdle. There is no evidence in the record that Dr.Funk was deliberately indifferent. The plaintiff makes several broad claims that he "repeatedly" informed Dr. Funk of his condition. However, the plaintiff has sufficiently demonstrated that only two letters were received by Dr. Funk and the doctor promptly replied to the plaintiff on each occasion. The plaintiff also received medical care for these injuries. There is no other evidence that Dr. Funk was informed that the plaintiff was suffering from a serious medical condition or that he was deliberately indifferent.

The plaintiff claims Dr. Vade was deliberately indifferent to his serious medical condition on August 19, 2003. The plaintiff says the doctor failed to treat him for all of his injuries, failed to provide him appropriate pain medication and lied in the medical records about the extent of his injuries.

Dr. Vade's medical record indicates that the plaintiff had abrasions on his forehead and both sides of his face as well as an abrasion on his lower lip. The record indicates no signs of bleeding.

The plaintiff says Dr. Vade failed to note many of his injuries including "busted and swollen lips,"a "busted" nose and two black eyes. (Plain. Resp., p. 19) As proof of his claims, the plaintiff points to the notes of a psychologist or psychiatrist who saw the plaintiff about a half hour before he was examined by Dr. Vade. This doctor's notes state that the plaintiff "[a]ppears to have blood on his shirt and dried blood is visible on his mouth." (Plain Res., Ex L)

This is hardly proof of a large discrepancy in the record. Dr. Vade's notes simply state that the plaintiff is not *currently* bleeding. The plaintiff does not explain how the psychologist also failed to note his "busted" lip and nose and his two black eyes. The plaintiff also does not explain how the X-rays taken of his facial bones fail to support his claimed injuries.

The plaintiff again makes broad accusations against Dr. Vade without evidence to support those claims. There is no evidence the plaintiff suffered from a serious medical condition on this day. In addition, even if the court did find that the plaintiff suffered from a serious medical condition, there is no evidence Dr. Vade was deliberately indifferent. He examined the plaintiff, provided medication and ordered X-rays. The fact that the plaintiff disagrees with the treatment he received is not enough to establish a violation of his constitutional rights. The motion for summary judgement on this claim is also granted.

C.  FAILURE TO PROTECT

Defendants Mote, Luster, Ford, Cox, Orr and Walker argue that the plaintiff has failed to demonstrate that they violated his Eighth Amendment rights by failing to stop staff assaults.[2] The court found that the plaintiff had alleged that the defendants were informed that the plaintiff was beaten by correctional officers on several occasions and needed medical care, but no action was taken. The plaintiff has now clarified that his claim is that these defendants failed to protect him from staff brutality.[3]

"Because officials have taken away virtually all of a prisoner's ability to protect himself, the Constitution imposes on officials the duty to protect those in their charge..." *Mayoral v. Sheahan*, 245 F.3d 934, 938 (7th Cir. 2001). However, to succeed, the plaintiff must show that a "substantial risk of serious harm" existed and that the defendant subjectively disregarded that risk. *Farmer v. Brennan,* 511 U.S. 825, 834, 837 (1994). Liability attaches under the Eighth Amendment when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*.

The defendants first argue that the plaintiff has failed to establish that the defendants had any personal knowledge or involvement in his claims. The only evidence presented with the motion for summary judgement is the plaintiff's deposition. In his deposition and in his response to the motion for summary judgement, the plaintiff alleges that he sent dozens of letters, filed numerous grievances and spoke to some of these defendants personally. While it is doubtful that some defendants like Director Walker had any personal knowledge of the plaintiff's allegations, the court has only the plaintiff's claims before it.

The defendants next argue that the plaintiff has failed to establish that the defendants were deliberately indifferent. The defendants state that the plaintiff has on numerous occasions lied about his suicidal claims, his allegations were investigated and none of the defendants believed he was in danger. Unfortunately, the only support for this argument is the plaintiff's deposition. The court has no way of knowing what any of these defendants knew of believed about the plaintiff. Did they know about his claims? Did they respond to his letters or complaints? Did they know about the extent of any claimed injuries? Did they know about the investigations? Did they know about the results of the investigations? The defendants have presented no evidence. The motion for summary judgement on this claim is denied.

D. RETALIATION

The defendants also contend that the plaintiff had failed to demonstrate that the retaliated

---

[2] The plaintiff does not appear to be making this claim against Dr. Funk as first indicated. The court notes that even if the plaintiff did intend to state such a claim, his letters to Dr. Funk dealt with the lack of medical care and Dr. Funk is clearly not the appropriate person to report the conduct of prison correctional officers not involved with medical care.

[3] The court notes that even if the plaintiff was trying to allege that these defendants failed to provide him medical care, none of these defendants are responsible for medical care and there is no evidence that the plaintiff was denied medical care.

against him. "To succeed on a retaliation claim, the plaintiff must "establish that his protected conduct was a motivating factor behind [the defendants' actions], but that should not end the inquiry.  Because the ultimate question is whether events would have transpired differently absent the retaliatory motive . . ." *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996).  If the same action would have occurred regardless of the retaliatory motive, the claim fails. *See Spiegla v. Hull*, 371 F.3d 928, 942 (7th Cir. 2004).  Therefore, if a prison officer's actions are supported by legitimate penological concerns, the retaliation claim fails as a matter of law. . . . It would be illogical and destructive of the disciplinary system of a penal institution to say that an act by a corrections officer that is supported by legitimate penological purposes can support a claim of retaliation for exercise of a constitutional right."

The plaintiff admits in both his deposition and his response to the statement of undisputed facts that he was not intending to allege that Dr. Funk retaliated against him.  As for Dr. Vade, the plaintiff alleges that the doctor retaliated against him on August 19, 2003.  The plaintiff states that he had filed a previous lawsuit against Dr. Vade, the doctor was aware of this and  retaliated by failing to provide medical care or document his injuries.

 The plaintiff now claims that on August 19, 2003, Dr. Vade asked the plaintiff if he was the inmate who was suing him and the plaintiff replied that he was. The plaintiff states that the doctor then

> began threatening and calling the plaintiff nasty foul names such as bitch, whore, asshole and punk, stating that he should fuck the plaintiff up for the lawsuit the plaintiff had filed against him. (Plain resp, p 25)

The plaintiff also alleges that the doctor became physically abusive during the exam by pinching and bending his thumb.

The court has already found that there is no evidence that Dr. Vade was deliberately indifferent to the plaintiff during his examination of the plaintiff on August 19, 2003.  The plaintiff did in fact receive medical care and there is no evidence the care was not appropriate for his injuries.

The court also notes that when the plaintiff's deposition was taken on December 20, 2005, he made no mention of any of the name calling or physical abuse even though he was asked several questions about what happened during the examination, what he based his retaliation claim on and if there was anything else he would like to add about the examination. The court further notes the plaintiff's grievance dated August 23, 2003 regarding Dr. Vade's examination makes no reference to any name calling or physical abuse.  Lastly, the plaintiff fails to provide any information about the lawsuit he says he had pending against Dr. Vade, or any relevant dates which would establish a chronology of events.

The plaintiff's claims that Dr. Vade was verbally or even physically abusive are far from credible.  However, even if the court assumed these allegations were true, the plaintiff has failed to demonstrate that the doctor retaliated against him.  There is no evidence in the record beyond the plaintiff's allegations that the plaintiff was not provided appropriate medical care on August

19, 2003.  The fact that the plaintiff disagrees with the treatment and thinks more should have been done are not enough.  There is no evidence that the plaintiff suffered from any serious injuries when he reported to the health care unit on August 19, 2003.

The plaintiff claims Defendants Mote, Cox, Luster, Walker, Orr and Ford retaliated against him by refusing to protect him from staff brutality.   The plaintiff says he filed numerous grievances and verbally complained to these defendants.  In retaliation, they failed to take any action to stop staff assaults.  The court has very little evidence from either side on this claim.  The motion for summary judgement is denied.

E. CONSPIRACY

The defendants all state that the plaintiff has failed to present any evidence that they conspired against him to either prevent him from receiving medical care or to allow staff brutality to continue.  To demonstrate a conspiracy, the plaintiff must demonstrate that the defendants 1) reached an agreement (express or implied) to deprive the plaintiff of constitutional rights; and 2) the plaintiff suffered "'actual deprivations of those rights in the form of overt acts in furtherance of the agreement.'" *Libra v. City of Litchfield*, 839 F. Supp. 1370, quoting Scherer v. Balkema, 840 F.2d 437, 442 (7th Cir. 1988).   In order to prove the existence of a civil conspiracy, a plaintiff is not required to provide direct evidence of the agreement between the conspirators; "(c)ircumstantial evidence may provide adequate proof of conspiracy." *Hoffman-LaRoche, Inc. v. Greenberg*, 447 F.2d 872, 875 (7th Cir.1971). *See also United States v. Varelli*, 407 F.2d 735, 741-42 (7th Cir.1969).

The plaintiff presents no argument that either Dr. Vade or Dr. Funk engaged in any conspiracy against him.  The plaintiff has also failed to present any evidence that Defendants Mote, Cox, Luster, Walker, Orr and Ford had any agreements to deprive him of his constitutional rights beyond his bald accusations.  The motion for summary judgement as to this claim is granted.

IV. CONCLUSION

Defendants Funk and Vade will be dismissed from this lawsuit as will all conspiracy claims.  The plaintiff's surviving claims against the remaining defendants are as follows:

   a) Defendant Scrogum used excessive force on December 7, 2002.
   b) Defendant McCormick failed to protect the plaintiff on December 7, 2002.
   c) Defendant Ganieny violated the Eighth Amendment when he threw urine
      on the plaintiff on December 7, 2002.
   d) Defendants Ganieany and McCormick used excessive force on December 12, 2002
   e) Defendant Altenbomer failed to protect the plaintiff on December 12, 2002.
   f) Defendants Ganieany, McCormick and Altenbomer were deliberately indifferent
      to the plaintiff's serious medical condition on December 12, 2002.
   g) Defendants Scrogum, Altenbomer and Ganieany used excessive force on    December 26, 2002.
   h) Defendants Allen, Kutse, Harvelle, Melvin and Austin were deliberately

indifferent to the plaintiff's serious medical condition on December 26, 2002.
I) Defendants Scrogum and Altenbomer used excessive force on January 15, 2003.
j) Defendant Altenbomer violated the Eighth Amendment when he spit in the plaintiff's face on April 30, 2003.
k) Defendant Tangman violated the Eighth Amendment on June 15, 2003 when he threw a bleach-like substance in the plaintiff's face.
l) Defendant Brady was deliberately indifferent to the plaintiff's serious medical condition on June 15, 2003.
m) Defendants Rubach, Baker, and Akinson used excessive force on August 17, 2003.
n) Defendants Rubach, Williams and Vale were deliberately indifferent to the plaintiff's serious medical condition on August 17, 2003.
o) Defendants McCormick, Scrogum, Mote, Dallas, Melvin, Luster, Cox, Wilson    Orr, Ford and Walker violated the Eighth Amendment when they were informed    of the beatings and took no action.
p) The remaining defendants retaliated against the plaintiff for his grievances and complaints concerning the beatings and harassment.  The retaliation included excessive  force, denial of meals, tampering with meals and threats.
The claims are against  Defendants Scrogum, Dallas, Ganieany, Altenbomer, McCormick, Tangman, Baker, Akinson, Rubach,  M. Melvin, Cox, Luster, Orr, Walker, Mote,  Melody Ford, Wilson,  Funk, Allen, Williams and Brady .

The claims are against the defendants in their individual capacities only.

The remaining defendants are to file a well-supported motion for summary judgement. There are many issues that should be more thoroughly addressed prior to trial.  While the defendants may not be able to address the plaintiff's claims of excessive force, the motion should address the plaintiff's claims of failure to protect and retaliation.  In addition, the plaintiff has made several claims that defendants were deliberately indifferent to his serious medical needs. (*See* f, h, l, n)  Based on the record presented to this court, it appears the plaintiff did receive medical care on many of these dates and medical personnel might be able to state whether the plaintiff suffered from a serious medical condition.  This motion must be filed on or before October 31, 2006.

**IT IS THEREFORE ORDERED that:**

**1)   Defendants Dr. Funk and Dr. Vade's motion for summary judgement is granted in its entirety. [d/e 59].  The clerk of the court is directed to dismiss these two defendants from this lawsuit.**

**2) Defendants' Mote, Cox, Luster, Walker, Orr and Ford's motion for summary judgement is granted in part. [d/e 61].  The plaintiff's claims that these defendants engaged in a conspiracy against him are dismissed. All other claims remain as stated above.**

**3) The remaining defendants are to file a well-supported motion for summary judgement on or before October 31, 2006.   The plaintiff must file his response to this motion on or before November 20, 2006.**

**4) A pretrial hearing is schedule by video conference on January 9, 2007 at 10:00 a.m.   The clerk is to issue writs for the parties participation in the video conference.**

**5) The parties are to submit a pretrial order to the clerk of the court on or before January 5, 2007.  The defendants are reminded that they bear the responsibility for the initial preparation of the proposed pretrial order.  The order submitted to the clerk of the court must contain information from both the plaintiff and defendants including potential witnesses and exhibits.**

**6) A bench trial is scheduled in this matter for January 18, 2007 at 9:00 a.m. at the Federal Courthouse in Urbana, Illinois.   Writs will be issued at the pretrial conference.**

ENTER this 8th day of September, 2006.

                                                      s\Harold A. Baker
                          _____
                                             HAROLD A. BAKER
                                    UNITED STATED DISTRICT JUDGE