UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

LAWRENCE WILLIS,
    Plaintiff,

vs.                                                    04-1413

Lt. SCROGUM, et. al.,
    Defendants.

This cause is before the court for consideration of the defendants' motion for summary judgement [d/e 82] and the defendants' motion to stay the trial date. [d/e 90]

## I. BACKGROUND

The plaintiff, Lawrence Willis, originally brought this action pursuant to 42 U.S.C. §1983 alleging that his constitutional rights were violated by 22 defendants at the Pontiac Correctional Center. On September 8, 2006, the court granted Defendants Dr. Funk and Dr. Vade's motion for summary judgement. The court also granted in part and denied in part a motion for summary judgement filed by six other defendants. *See* September 8, 2006 Court Order.

The plaintiff has 20 surviving defendants including: Dale Scrogum, Benny Dallas, Lowell Ganieany, Chad Altenbaumer, Kurt McCormick, Gregory Tangman, John Baker, Michael Atkinson, Keith Rubach, Michael Melvin, James Cox, Adella Jordan-Luster, Rick Orr, Roger Walker, Stephen Mote, Melody Ford, Corey Wilson, James Allen, Josephina Torrez-Brady and Christopher Brady.

The plaintiff's surviving claims against these defendants are as follows:

a) Defendant Scrogum used excessive force on December 7, 2002.
b) Defendant McCormick failed to protect the plaintiff on December 7, 2002.
c) Defendant Ganieany violated the Eighth Amendment when he threw urine on the plaintiff on December 7, 2002.
d) Defendants Ganieany and McCormick used excessive force on December 12, 2002
e) Defendant Altenbomer failed to protect the plaintiff on December 12, 2002.
f) Defendants Ganieany, McCormick and Altenbomer were deliberately indifferent to the plaintiff's serious medical condition on December 12, 2002.
g) Defendants Scrogum, Altenbomer and Ganieany used excessive force on December 26, 2002.
h) Defendants Allen, Kutse, Melvin and Austin were deliberately
indifferent to the plaintiff's serious medical condition on December 26, 2002.
i) Defendants Scrogum and Altenbomer used excessive force on January 15, 2003.
j) Defendant Altenbomer violated the Eighth Amendment when he spit in the

     plaintiff's face on April 30, 2003.
- k) Defendant Tangman violated the Eighth Amendment on June 15, 2003 when he threw a bleach-like substance in the plaintiff's face.
- l) Defendant Brady was deliberately indifferent to the plaintiff's serious medical condition on June 15, 2003.
- m) Defendants Rubach, Baker, and Akinson used excessive force on August 17, 2003.
- n) Defendants Rubach and Williams were deliberately indifferent to the plaintiff's serious medical condition on August 17, 2003.
- o) Defendants McCormick, Scrogum, Mote, Dallas, Melvin, Luster, Cox, Wilson, Orr, Ford and Walker violated the Eighth Amendment when they were informed of the beatings and took no action.
- p) The remaining defendants retaliated against the plaintiff for his grievances and complaints concerning the beatings and harassment. The retaliation included excessive force, denial of meals, tampering with meals and threats.

The claims are against the defendants in their individual capacities only.

     The court instructed the remaining defendants to file a well-supported motion for summary judgement addressing many of these claims prior to trial. *See September 8, 2006 Court Order.* The court stated that while the defendants may not be able to address the plaintiff's claims of excessive force, the motion should address the plaintiff's claims of failure to protect, deliberate indifference to a medical condition and retaliation. *Id.*

## II. FACTS

     The following facts are taken from the defendants' motion for summary judgement, the plaintiff's response and the attached exhibits:

     Dr. Arthur Funk was Medical Director and Pontiac Correctional Center and never personally examined the plaintiff. However, on December 9, 2002, Dr. Funk received a letter from the plaintiff stating that he had been assaulted by staff and he was denied medical attention by Dr. Funk's staff. Dr. Funk responded the same day with a memorandum to the plaintiff telling him that he needed to direct his medical concerns to the cellhouse CMT, or he could send a
yellow "Medical Request" form to the healthcare unit. (Def. Memo, Df. Funk Aff., p. 2)

     Dr. Funk received additional correspondence from the plaintiff on December 11, 2002 , which stated that the CMT's would not stop by the plaintiff's cell. The plaintiff then asked the doctor to submit a medical form on his behalf. Dr. Funk again responded on the same day providing the same information to the plaintiff on how to properly address his claims. The doctor also told the plaintiff that he would forward a copy of the plaintiff's letter to the cellhouse CMT's.

     Dr. Funk says the plaintiff's medical records indicate that he was seen by a medical physician on the next day, December 12, 2002. Dr. Bulatovic examined the plaintiff in the

health care unit and the plaintiff alleged that he had been assaulted on December 7, 2002.  Dr. Bulatovic observed a contusion on the plaintiff's left cheek.  He did not observe any other bruises, lumps, abrasions or bite marks.  Dr. Bulatovic prescribed Motrin, and concluded that the plaintiff's injuries did not coincide with the plaintiff's claims. (Def. Memo, Dr. Vade Aff.)

Dr. Funk claims he was not informed of the plaintiff's claims that his medical needs were again ignored after he was assaulted on December 26, 2002.  Nonetheless, the doctor states that the medical records indicate that the plaintiff was provided medical treatment on December 27, 2002.

Dr. Vade examined the plaintiff on this occasion.  Dr. Vade says the plaintiff's face was swollen, but there was no evidence of bleeding.  Dr. Vade ordered x-rays of the plaintiff's facial bones and chest.  He prescribed Motrin and warm compress pack and instructed the plaintiff to follow-up with a physician after the X-rays.  Dr. Vade says he did not believe the plaintiff's injuries put him in any risk nor did he believe the plaintiff was suffering from a serious medical condition. (Dr. Vade Aff, p. 2).   The X-rays later revealed no abnormalities.

Dr. Funk received another letter from the plaintiff on January 13, 2003 asking why he had not receive his medical records dated December 12, 2002 and December 27, 2002.  The letter did not contain any allegations that the plaintiff had been denied medical treatment or complaints about the treatment he had received.     Dr. Funk responded by telling the plaintiff that he could only obtain copies of medical records from the medical records department.

Dr. Funk says he was never informed of the plaintiff's allegations that he was assaulted and denied medical care on January 15, 2003, but medical records show the plaintiff received medical care on January 16, 2003.

Dr. Funk says on June 16, 2003, the plaintiff alleged that CMT Brady refused to give him treatment when he claimed that a cup of liquid soap was thrown in his eyes.  Dr. Funk says complaints against CMTs are handled by the Nursing Director, not the Medical Director.  Nursing Director Ms. Ellinger responded to the grievance and spoke to the CMT.  The CMT had no recollection of any conversation with the plaintiff about liquid soap.  The plaintiff did not request any follow up medical care concerning this incident. (Def. Memo, Dr. Funk Aff.)

Dr. Vade next saw the plaintiff on August 19, 2003.  The plaintiff said he had been assaulted and then threatened to kill himself in order to see a doctor.  Dr. Vade observed abrasions on the plaintiff's forehead, both sides of his face and his lower lip.  There was no sign of bleeding.  The doctor prescribed two Tylenol tablets and prescribed additional tablets if needed for pain.  He also placed the plaintiff on suicide watch and ordered x-rays.  The x-rays revealed no additional injury to the plaintiff.  Dr. Vade says in his medical opinion, he did not consider the plaintiff to be suffering from a serious medical condition on August 19, 2003.  Nonetheless, the doctor says he did attend to the plaintiff's complaints and ordered follow-up care.

Dr. Funk says he was never informed of the plaintiff's additional claims that he was assaulted on December 12, 2002,  April 30, 2003 or August 17, 2003.  Dr. Funk says based on

his review of the plaintiff's letters, grievances and medical records, it appears the plaintiff failed to follow the proper protocol on various occasions throughout his incarceration at Pontiac Correctional center. Dr. Funk says in his medical opinion, the plaintiff "was not suffering from a serious medical need" during his incarceration. (Funk Aff., p. 5).

## II. LEGAL STANDARD

The entry of summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the nonmoving party. Id.

A party moving for summary judgment initially has the burden of showing the absence of any genuine dispute of material fact based on the evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 153 (1970); *Schroeder v. Barth, Inc.,* 969 F.2d 421, 423 (7th Cir. 1992). A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994). The evidence and all reasonable inferences drawn therefrom are viewed in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. Nonetheless, "(s)ummary judgement is not a discretionary remedy. If the plaintiff lacks enough evidence, summary judgement must be granted." *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir. 1994).

## III. ANALYSIS

A. FAILURE TO PROTECT

The defendants first argue that the plaintiff has failed to demonstrate that Defendants McCormick, Scrogum, Mote, Dallas, Melvin, Luster, Cox, Wilson, Orr, Ford and Walker violated the Eighth Amendment when they were informed of plaintiff's claims that he was repeatedly beaten by guards and took no action to prevent further attacks. To establish a failure-to-protect claim, a prisoner must show that he has been incarcerated under conditions posed a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). A prison official is deliberately indifferent if he is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."*Id.* at 837. Only deliberate indifference will suffice to state a failure-to-protect claim; mere negligence is not sufficient. *Id.*

The defendants first argue that the plaintiff has lied on numerous occasions about being in physical danger in order to be assigned to a different area of the prison. As proof of this claim, the defendants point to the plaintiff's deposition. The plaintiff admits that the main reason for his suicide threats was his attempt to convince officials to move him to a different cell. (Plain. Depo, p. 120) The plaintiff makes no claims concerning his allegations of excessive force. The defendants also maintain that it is "undisputed" that the plaintiff was examined by medical staff after his allegations of staff brutality. (Def. Memo, p. 21). The plaintiff disagrees

with this claim.  The plaintiff says on some occasions he was not seen until days after his claims of assault.  The defendants also point out that the plaintiff's claims of staff brutality were investigated by both Internal Affairs at Pontiac Correctional Center and by the Illinois State Police.  The defendants do not state whether the results of either investigation were provided to any of the named defendants.   The defendants state that there is no evidence that the defendants ever believed the plaintiff was in danger.   The defendants conclude that the "undisputed evidence"demonstrates that the defendants were never personally aware of any of the alleged beatings and never had any reason to believe that the plaintiff was in any danger.

First, the defendants use of the word "undisputed" is wholly inappropriate.  The plaintiff claims that on some occasions the named defendants actually witnessed the alleged attacks and took no action. For instance, the plaintiff has alleged that Defendant McCormick watched Defendant Scrogum beat him on December 7, 2002 and did not intervene. (Plain. Memo, p. 12) The plaintiff also repeatedly alleges that he personally told some of the defendants about the attacks and begged them to protect him including Defendants Dallas and Melvin.(Plain Memo, p. 13, 14) The plaintiff also says he informed Defendants Mote, Cox, Luster and Wilson either personally or in letters or grievances. (Plain. Memo, p. 15)

Second, the defendants are asking the court to make a factual determination of which side is telling the truth about the events.  The plaintiff says he repeatedly told the defendants he was in danger and needed protection.  The defendants say they were not aware of any alleged attacks or did not believe he was in any really jeopardy.  A factual determination is not appropriate in a motion for summary judgement.

It is still difficult for the court to believe that Defendants such as Illinois Department of Corrections Director Roger Walker, Deputy Director Rick Orr or perhaps Warden Stephen Mote had personal knowledge of the plaintiff's allegations.  These individuals are responsible for the administration of several prisons and thousands of prisoners.  However, the only evidence submitted by the defendants with their first motion for summary judgement was the plaintiff's deposition.   In the second motion for summary judgement, the defendants have submitted the same basic affidavit for each defendant.  Each defendant states they were not aware of the plaintiff's allegations.   There is simply not enough specific evidence to address the personal involvement of these individuals.

B.  DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL CONDITION.

The defendants next argue that the plaintiff has failed to establish that any of the defendants were deliberately indifferent to his serious medical condition when they refused to provide medical treatment after the alleged attacks. The plaintiff must pass both an objective and a subjective test in order to establish that the lack of appropriate medical care violated the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Wilson v. Seiter,* 501 U.S. 294, 297 (1991).  The plaintiff must first demonstrate that the alleged deprivation was sufficiently serious.  *Id*.  The plaintiff must also show that the defendants acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  "[A] finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997)(citing *Farmer* at 840-42).   Inadequate

medical treatment due to negligence or even gross negligence does not support an Eighth Amendment violation. *Shockley v Jones*, 823 F.3d 1068, 1072 (7th Cir. 1987). In addition, inmates are not entitled to a specific type of treatment, or even the best care, only reasonable measures to prevent a substantial risk of serious harm. *Forbes v. Edgar,* 112 F.3d, 262, 267 (7th Cir. 1997).

The defendants argue that they are entitled to summary judgement based on the sworn affidavits for Defendants Ganieary, McCormick, Altenbaumer, Allen, Melvin, Rubach and Torrez that they were not aware of any occasions when the plaintiff was injured or in need of medical care and did not receive it. Once again the defendants are asking the court to make a factual determination of which side is telling the truth. The defendants further argue that Dr. Funk states that based on a review of the record, he does not believe the plaintiff suffered from a serious medical need during his incarceration.

The plaintiff's complaint alleges that he was assaulted on December 7 and December 25 in 2002 and January 15, June 15 and August 17 in 2003. The evidence presented by the defendants shows the plaintiff was seen and treated by medical staff on December 12, 2002; December 26, 2002; January 16, 2003 and August 19, 2003. There is no evidence the plaintiff put in a request for medical care after the June 15, 2003 allegation.

Although not argued by the defendants, the most the plaintiff can claim is that the defendants delayed medical care for a serious medical condition. "[P]roof of deliberate indifference may be found where a prison official intentionally denies or delays access to medical care or intentionally interferes with the treatment once prescribed." *Jones v. Natesha*, 151 F.Supp.2d 938, 945 (N.D. Ill. 2001) *citing Ford v. Page,* 2001 WL 456427 at 6(N.D.Ill. April 27, 2001). A delay in scheduling an appointment for medical treatment may constitute deliberate indifference. *Jones v. Simek*, 193 F.3d 485, 490-491 (7th Cir. 1999) However, "an inmate who complains that delay in medical treatment rose to constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston v Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996).

There is no evidence that any delay detrimentally impacted the plaintiff. As the defendants point out, Dr. Funk states there is not evidence the plaintiff suffered from a serious medical need on any of the occasions that he was seen by health care professionals. The court will therefore grant summary judgement on the plaintiff's claims that the defendants were deliberately indifferent to his serious medical condition.

C.  RETALIATION

The defendants argue that the plaintiff has failed to establish that the defendants retaliated against the plaintiff for his various grievances and complaints. To succeed on a retaliation claim, the plaintiff must "establish that his protected conduct was a motivating factor behind [the defendants' actions], but that should not end the inquiry. Because the ultimate question is whether events would have transpired differently absent the retaliatory motive . . ." *Babcock v. White,* 102 F.3d 267, 275 (7th Cir. 1996). If the same action would have occurred regardless of the retaliatory motive, the claim fails. *See Spiegla v. Hull*, 371 F.3d 928, 942 (7th

Cir. 2004). Therefore, if a prison officer's actions are supported by legitimate penological concerns, the retaliation claim fails as a matter of law.

The defendants state that "speculation based on suspicious timing alone does not support a reasonable inference of retaliation." (Def. Memo, p. 25) The defendants argue that the plaintiff has failed to show any retaliatory action by the defendants while they have submitted affidavits stating that they took no action to retaliate against the plaintiff. Once again, the defendants ask the court to determine which side is telling the truth.

The plaintiff states that Defendant Scrogum used excessive force against him on December 7, 2002. He complained about the incident and asked for medical care. The plaintiff says on December 12, 2002 and again on December 26, 2002, he was again assaulted by guards due to his complaints and grievances. The plaintiff says the guards made specific references to his complaints about the assault and even assaulted him when he finally did receive medical care. The plaintiff says he was again assaulted in January of 2003. The plaintiff may not be able to link the events that occurred in June and August of 2003 to his claim of retaliation, but there is little evidence before this court from either the plaintiff or the defendants. The motion for summary judgement is denied.

D. QUALIFIED IMMUNITY.

The defendants last argument is that the defendants are entitled to qualified immunity. Government officers are protected by qualified immunity from damages for those actions that do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The contours of the alleged right must be sufficiently clear so that a reasonable official would understand that his actions violate the rights. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). When a defendant raises a qualified immunity defense, the plaintiff bears the burden of showing that the defendant violated a clearly established constitutional right. *Clash v. Beatty*, 77 F.3d 1045, 1047 (7th Cir. 1996).

The defendants argue that "if the Court finds that the supervisory defendants were constitutionally required to assume that the Plaintiff's claims of 'staff brutality' were legitimate, no such requirement existed at the time of the alleged violation." (Def. Memo, p. 25). The defendants do not clarify which supervisory defendants they are referencing. In addition, the defendants apparently assume that because they have submitted affidavits claiming that they had no reason to believe the plaintiff was in any danger, the court must assume that they are telling the truth and the plaintiff is not. Again, the plaintiff has stated that he personally informed the defendants about the assaults and about his fear of future assaults. The motion for summary judgement is denied.

III. CONCLUSION.

The defendants second motion for summary judgement includes affidavits from most of the named defendants. However, the defendants simply state that they did not assault the plaintiff or did not retaliate against him or did not know about the plaintiff's allegations. The

defendants do not provide any specific information beyond their general denials.  For instance, did the Warden actually sign any of the grievances?   Did the Illinois Department of Corrections administrators routinely review and receive inmate mail or grievances?  This case is now more than three years old and the court will not delay a trial any further.

The court will grant summary judgement on the plaintiff's claims that the defendants were deliberately indifferent to his serious medical needs.  The court will dismiss Defendants Allen, Williams and Brady since they were only specifically accused of this claim.  The defendants motion to stay the trial date due to Defendant Brady's military duty is denied. [d/e 90]

The plaintiff's surviving claims are as follows:

a) Defendant Scrogum used excessive force on December 7, 2002.
b) Defendant McCormick failed to protect the plaintiff on December 7, 2002.
c) Defendant Ganieany violated the Eighth Amendment when he threw urine
    on the plaintiff on December 7, 2002.
d) Defendants Ganieany and McCormick used excessive force on December 12, 2002
e) Defendant Altenbomer failed to protect the plaintiff on December 12, 2002.
f) Defendants Scrogum, Altenbomer and Ganieany used excessive force on December 26, 2002.
g) Defendants Scrogum and Altenbomer used excessive force on January 15, 2003.
h) Defendant Altenbomer violated the Eighth Amendment when he spit in the
    plaintiff's face on April 30, 2003.
I) Defendant Tangman violated the Eighth Amendment on June 15, 2003 when
    he threw a bleach-like substance in the plaintiff's face.
j Defendants Rubach, Baker, and Akinson used excessive force on August 17,
    2003.
k) Defendants McCormick, Scrogum, Mote, Dallas, Melvin, Luster, Cox, Wilson, Orr,
   Ford and Walker violated the Eighth Amendment when they were informed of  the
   beatings and took no action.
l) The remaining defendants retaliated against the plaintiff for his grievances and
    complaints concerning the beatings and harassment.  The retaliation included
     excessive  force, denial of meals, tampering with meals and threats.

**IT IS THEREFORE ORDERED that:**

**1) The defendants' second motion for summary judgement is granted in part and denied in part pursuant to Fed. R. Civ. P. 56. [d/e 82] The court will dismiss any claims that the defendants were deliberately indifferent to the plaintiff's serious medical needs. Consequently, the clerk of the court is directed to dismiss Defendants Allen, Williams and Brady.  The motion for summary judgement is denied as to all other claims and defendants as outlined in this order.**

**2) The defendants motion to stay the trial date is denied. [d/e 90].  Defendant Brady has been dismissed.**

**3) This case remains as set for pretrial on January 9, 2007 at 10:00. The defendants bear the burden of the initial preparation of this order, but the order submitted to the court must contain information from both the defendants and the plaintiff. The parties must submit the proposed pretrial order to the clerk of the court on or before January 5, 2007.**

ENTERED this 21st day of December, 2006.

                               s\Harold A. Baker
                _____
                               HAROLD A. BAKER
                        UNITED STATES DISTRICT JUDGE